UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAUSTEVEION JOHNSON<br><br>                      Plaintiff,<br><br>    v.<br><br>ELY STATE PRISON, *et al*,<br><br>                      Defendants. | Case No. 3:14-cv-00122-MMD-WGC<br><br>ORDER ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE WILLIAM G. COBB |

**I.    SUMMARY**

Before the Court is the Report and Recommendation of United States Magistrate Judge William G. Cobb (dkt. no. 76) ("R&R" or "Recommendation") recommending the Court grant Defendants' Motion for Summary Judgment (dkt. no. 57) only insofar as Plaintiff seeks damages against Defendants in their official capacities, and deny Plaintiff's Motion for Summary Judgment (dkt. no. 62). An objection to the R&R was timely filed by Defendants ("Objection"). (Dkt. no. 81.) Upon reviewing the Recommendation and underlying briefs, this Court finds good cause to adopt the Magistrate Judge's Recommendation.[1] Defendants' Motion for Summary Judgment is granted in part and denied in part. Plaintiff's Motion for Summary Judgment is denied.

---

[1] As set out in this Order, the Court agrees with the Magistrate Judge's conclusions about the parties' respective motions, but disagrees with portions of the analysis.

## II. BACKGROUND

The relevant background is set out in Judge Cobb's R&R, which the Court adopts. (Dkt. no. 76 at 1-3.)

## III. LEGAL STANDARD

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1).  Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection."). Thus, if there is no objection to a magistrate judge's recommendation, then the court may accept the recommendation without review*. See, e.g.*, *Johnstone*, 263 F. Supp. 2d at 1226 (accepting, without review, a magistrate judge's recommendation to which no objection was filed).

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric*., 18 F.3d 1468, 1471 (9th Cir. 1994)." Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). An issue is "genuine" if there is a sufficient

evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Nw. Motorcycle Ass'n*, 18 F.3d at 1472. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (citation and internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

///

## IV.  DISCUSSION

In light of Defendants' Objection, the Court has engaged in a *de novo* review to determine whether to adopt Magistrate Judge Cobb's Recommendation. Defendants specifically object to the Magistrate Judge's conclusions about Johnson's free exercise claim in count I of his Complaint. According to Defendants, the Magistrate Judge failed to give proper deference to prison officials, erred in concluding that factual issues remained concerning the rational connection between the security measures on chapel services and safety and security at the jail, and erred in concluding that factual issues remained concerning whether Johnson was provided alternate means of exercising his religion. (Dkt. no. 81 at 2.)

Johnson's free exercise claim is premised on the fact that he, a practicing Muslim, was prevented from attending Jum'ah for three years while a prisoner at Ely State Prison ("ESP").

Prisoners do not abandon their Constitutional rights while incarcerated. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Prison officials, however, may impose some limitations on those rights in order to achieve certain goals like safety and security. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). When a regulation implicates a prisoner's constitutional rights, the court must determine whether the regulation is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In analyzing the legitimacy of regulation of a prisoners' religious expression, the court is instructed to afford appropriate deference to prison officials, "'who are actually charged with and trained in the running of the particular institution under examination.'" *O'Lone*, 482 U.S. at 349 (quoting *Bell*, 441 U.S. at 562).

An analysis under *Turner* employs the following factors: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other

4

inmates, and on the allocation of prison resources generally;" (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91. This first factor is essential to the policy's validity. *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir.1990). The *Walker* court further explained the prison authorities' burden in showing a valid rational connection: "[T]hey must first identify the specific penological interests involved and then demonstrate both that those specific interests are the actual bases for their policies and that the policies are reasonably related to the furtherance of the identified interests. An evidentiary showing is required as to each point." *Id.* at 386

### A.  Rational relation to legitimate interest

Defendants argue that Johnson was prevented from attending Jum'ah because he was classified as a Level 3 high risk inmate and was serving disciplinary sanctions. (Dkt. no. 57 at 9.) ESP's policy does not allow these types of inmates to participate in group religious services at the facility's chapel. Defendants assert the reason for this policy is to maintain safety and security at ESP. (*Id.*) In support, Defendants offer declarations from Tasheena Sandoval, a caseworker at ESP, and Harold "Mike" Byrne, as associate warden. (Dkt. no. 57-1 ¶¶ 9-13; dkt. no. 57-2 ¶¶ 8-17.) Sandoval specifically declared that "the basis for limiting Level 3 inmates and inmates serving disciplinary sanctions from participating in group religious services is to minimize opportunity for violence by inmates who have demonstrated behavior issues which directly jeopardize institutional safety and security." (Dkt. No. 57-1 ¶ 13.) Byrne similarly declared that "Level 3 inmates are not allowed direct access to the religious Chapel's congregational services due to safety and security risks posed to the institution." (Dkt. No. 57-2 ¶ 12.)

The Court finds that these declarations support the claims that the policy of not allowing Level 3 inmates to attend group religious services is 1) actually based on security and safety concerns and 2) rationally related furthering the prison's security and safety interests. *Cf Solomon v. Michigan Dep't of Corr.*, No. 2:10-CV-320, 2012 WL 892486, at *4 (W.D. Mich. Feb. 17, 2012) (report and recommendation adopted), 2012 WL 892478 (W.D. Mich. Mar. 14, 2012) (affidavit from chaplain explaining that

scheduling conflicts prevented certain religious services from being held supported finding that policy regarding religious services was rationally related to security and scheduling interests).

The Court disagrees with the Magistrate Judge's finding that the first *Turner* factor involves genuine disputes of material facts. Though it is true that Johnson has alleged that Level 3 inmates are treated the same as Level 1 inmates in many respects, this does not undermine the rationale for ESP's policy of preventing inmates whom ESP has categorized as prone to violence from joining other inmates in group religious services. *See Friedman v. Arizona*, 912 F.2d 328, 332–33 (9th Cir.1990) (finding evidence concerning anticipated problems, even though no actual problems arose from the prisoner's conduct, sufficient to satisfy *Turner's* first factor); *Cf. Clark v. Small*, No. 09CV1484 L JMA, 2011 WL 2004132, at *6 (S.D. Cal. May 23, 2011) (temporary suspension of Muslim inmates' ability to congregate daily during Ramadan after riot was rationally related to goals or maintaining order and security).

Johnson's claims that he was a model inmate and was only classified as Level 3 because he could not take a job due to his medical status are relevant to other parts of his action and other *Turner* factors, but they are not relevant to the question of whether prohibiting Level 3 inmates from attending group religious services is rationally related to the security and safety of ESP.

The Court finds that Defendants have shown that the policy in question is rationally related to legitimate government interests. Therefore, the first *Turner* factor weighs in Defendants' favor.

**B.    Alternative means to exercise right**

The second *Turner* factor requires the court to look at whether there are "alternative means of exercising the right [that] remain open to prison inmates." *Turner*, 482 U.S. at 89-90. In *O'Lone*, the Supreme Court confirmed that there were no alternative means of attending Jum'ah, as the Muslim religion demands that it occur at a particular time. *O'Lone*, 482 U.S. at 351. Nonetheless, the Supreme Court pointed out

6

that this requirement makes it difficult for prison officials to assure every Muslim inmate can attend. *Id*. The Supreme Court declared: "While we in no way minimize the central importance of Jum'ah to respondents, we are unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological objectives to that end." *Id*. at 351-52. As a result, the court instructed that an inquiry should be made as to "whether the inmates were deprived of 'all means of expression.'" *Id*. at 352 (citing *Turner*, 482 U.S. at 92. The court determined it was appropriate to examine whether the inmates "retain the ability to participate in other Muslim religious ceremonies," and found that the record demonstrated the inmates were not "deprived of all forms of religious exercise, but instead freely observe a number of their religious obligations." *Id*. The record revealed that the inmates freely observed many of their religious obligations, including the right to congregate for prayer outside of working hours, access to an imam, the delivery of different meals when pork was served in the prison, special arrangements during the month-long observance of Ramadan with a period of fasting and prayer. *Id*.

Johnson argues that, while he was allowed to pray in his cell, Defendants denied him any other opportunities to practice his religion. (Dkt. no. 65 at 10.) He also states that he was denied the use of scented oils, access to Halal meals, the thirty-day Ramadan feast, the Eid-al-Fitr feast, and Taleem classes. (Dkt. no. 65 at 31.)

Defendants failed to address Johnson's claims that he was denied all other means of practicing his religion besides being allowed to pray in his cell in their reply brief. Instead, they now offer several pieces of evidence suggesting that Johnson had access to an imam, oils, an appropriate diet, an opportunity to participate in Ramadan, and the opportunity to purchase additional food for Eid al-Adha. (Dkt. nos. 81-1; 81-2; 81-3; 81-4.)

"[A] district court has discretion, but is not required, to consider evidence presented for the first time in a party's objection to a magistrate judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000). Because considering the evidence in this case will not ultimately affect the outcome of the

decision to deny Defendants' Motion, the Court will consider this newly provided evidence. The parties have presented conflicting evidence about whether Johnson had access to alternative ways to practice his religion. Therefore, the Court finds that there is a genuine dispute of material facts as they relate to the second *Turner* factor.

### C.    Impact on others

The third factor identified by *Turner* is the impact accommodating the right at issue would have on other inmates, prison personnel, and the allocation of resources at the facility. *Turner*, 482 at 90. In *Shakur*, the Ninth Circuit held that conclusory assertions that an accommodation would be too burdensome are insufficient. *Shakur*, 514 F.3d at 887.

The Magistrate Judge found that Defendants had not provided specific evidence about what sort of additional resources would be necessary if Level 3 inmates were allowed to attend Jum'ah. (Dkt. no. 76 at 13.)

Defendants are correct to argue that the relevant inquiry is not how many Level 3 inmates would request to attend Jum'ah, but rather how many would request to attend any group prayer service at the prison's chapel. (Dkt. no. 81 at 7.) However, they have still failed to present sufficient evidence for the Court to make a determination, even under this broader framework. The Court has no basis for determining how many Level 3 inmates would request to attend group services, how often would such request be made, and how much additional work would be created for staff. Therefore, the Court agrees with the Magistrate Judge's assessment — there is a genuine question of material fact remaining with respect to this factor.

### D.    Alternatives

The last factor the Court considers is the "absence of ready alternatives" and "the existence of obvious, easy alternatives" to precluding Level 3 inmates like Johnson from attending group religious services. *Turner*, 482 U.S. 90. The Magistrate Judge found a factual dispute in regards to this factor as well. This Court agrees.

///

8

The fact that the only impediment allegedly preventing Johnson from moving to Level 1 from Level 3, and being eligible to attend Jum'ah, was his inability due to his medical status to take a job in culinary or yard labor, indicates the prison may be able to use a more precise criteria for determining whether an inmate is eligible to attend religious services. The Court agrees that a factual dispute remains in regards to the final *Turner* factor.

## V.  CONCLUSION

It is therefore ordered, adjudged and decreed that the Report and Recommendation of Magistrate Judge William G. Cobb (dkt. no. 76) is accepted and adopted consistent with this Order. The Court finds that Defendants have presented evidence sufficient to show that the first *Turner* factor weighs in their favor. The Court cannot resolve the remaining factors due to outstanding disputed issues of material fact.

It is therefore ordered that Plaintiff's Motion for Summary Judgment (dkt. no. 62) is denied.

It is further ordered that Defendants' Motion for Summary Judgment (dkt. no. 57) is granted, only insofar as Plaintiff seeks damages against Defendants in their official capacities, and is denied in all other respects.

DATED THIS 30th day of March 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE